Tilghman C. J.
I consider the defendant Barry as standing in the situation of one who asks the Court to interfere in a summary way, and relieve him from an execution. The plaintiff’s judgment against Affleck and Barry, was obtained 31st August 1796, and the agreement under which Barry applies for relief, is dated 3d August 1796. If that agreement had amounted to an actual release, as Barry now contends, it ought to have been pleaded after the last continuance, in order to prevent a judgment. But it was not intended as a release, and therefore was not pleaded as such. Still if it can be shown, that Barry is clearly entitled to *re^e^> there can be no objection to the summary iuterposition of the Court, for such is the practice of *317 every day. But unless his case is made out entirely to the satisfaction of the Court, it will be most prudent to leave him to his action on the agreement. This agreement is drawn in a very confused unintelligible manner. It is difficult to affix any rational meaning to it, nor do I think it necessary to give a decided opinion upon it. Thus much is certain that the consideration on which Barry’s case rests, is the assignment made by him in trust for the plaintiff and others of his creditors of a judgment which he had obtained against his partner Affleck the other defendant in this suit. Having made this assignment he had no right to intermeddle, except with the consent of the assignees. Now it appears, that without the knowledge of the assignees, a quantity of valuable land in Wayne county, which had been levied on as the property of Affleck, was purchased for a trifle by Barry, and has since been so managed as to be sold for taxes, and lost. It appears also that whatever may have been Barry’s motive or intention, whether he acted as agent for the assignees or intended to purchase on his own account, he did not, although requested, give them satisfactory information on the subject. It is possible, that upon full investigation, he may be able to explain his conduct so as to acquit-himself of blame; but upon the evidence which has been produced before us, his equity appears by no means so clear, as it ought to do, to justify us in stopping the plaintiff’s execution. I am therefore of opinion, that theplaintiff should be permitted to proceed, and Barry be left to his action on the agreement.
Ybates J.
The great question in this case is, whether the agreement made by Joseph B. Barry with his creditors, of whom the plaintiff was one, operates as a release under all the circumstances of the case? I admit that there are no prescribed forms of words necessary to construe it to be a release. The intention of the parties, fairly collected from the instrument itself, must govern.
On both sides it is admitted, that it is obscurely worded; and we have seen, that it is susceptible of different constructions with a considerable degree of plausibility. Were it necessary to give an opinion on its real effect, I should *rather incline to think, that Barry was not intended to be discharged from his responsibility to the partnership debts, unless the amount of the judgment which he had obtained against Affleck, and assigned in trust for his subscribing creditors, was fully recovered. He had obtained a report of referees for 603?. 12s. and the list of partnership *318 debts returned by Affleck exceeded that amount by the sum of 122i. 9s. 3the list returned by Barry exceeded it by 389i. 19s. 2d. Exceptions had been filed to the report of referees, when the agreement was made, and they were not finally decided on until 25th March 1802. Hence it was expressed in the condition of the instrument, “ that if the judgment shall remain firm and good in law, and the amount thereof he recoveredas heretofore specified from the said Affleck, then and in such case, the obligation to remain in full force, otherwise to be of no effect.” I cannot satisfy the expressions contained in the second branch of this sentence, unless I construe the writing in the manner I have mentioned.
But admitting the intention to be dubious, ought the Court to interpose and prevent the effect of the plaintiff’s judgment? A clear ground should be shown to justify such a measure. Barry had assigned his judgment to trustees for the use of his creditors, and yet afterwards he buys articles at the sheriff’s sale under the judgment, without therefor accounting to the sheriff or trustees. Without adverting to the arrangements made relative to the judgment, the conduct of Barry in proceeding to purchase the lands of Affleck in Wayne county without the knowledge of his creditors, and his subsequent transactions therein, do not entitle him to peculiar regard. Upon the whole matter I think it most consistent with a sound discretion, that we should put Barry to his action upon the agreement, if he thinks himself injured by the plaintiff’s proceeding on his execution, and that the motion made by him in its present form be denied.
Brackenridge J.
The defendant in this case is my host, at whose hotel I at present lodge, and have for some time ; and though this would not be an exception even to the jury box, propter affectum, much less to the bench, i.n whose case an interest only forms a ground of challenge, yet it is a consideration, which for the sake of a party who may suspect a *^ean’ng? a jU(3ge cannot but have in his mind ; and, if consistent with his duty, he will avoid taking a part, or a case. true only bias which can be suspected, must arise from an idea that the host may have had an opportunity of intimating something of his case to his guest, and of giving impressions; or independent of this, from that partiality which the relation must in some degree beget; for it is arelation which has been thought, at all times, to beget the strongest amity, or at least to lay the foundation of the strongest claims of reciprocal obligation. The murder of a host by his guest, or of a guest by *319 his host, has been ranked with parricide, or considered a species of it.

Ilium et parentis crediderem sui

Fregisse cervieem, et penetralia

Sparsisse nocturno cruore

Ilospitis-
But it is to be taken into view, that the lien of amity or obligation does not attach with equal force in the case of a purchased hospitality ; at least it is not supposed to exist with equal force, where the hospitality and obligation on one side may be considered as discharged by payment on the other, and where the intercourse cannot be presumed to be the same as between individuals, where the hospitality is afforded on other considerations than a pecuniary compensation, contains a compliment of implied respect merely, and is given and received on terms of reciprocal equality. The host in my case is not strictly a host, or hospes ; but hospitator,• or caupo, a tavern keeper; and it might seem an affectation of delicacy in me to notice this circumstance of my lodging in the house of the defendant as affording the least presumption of a bias, or begetting the slightest suspicion of a possible partiality, were it not, that it has been thrown out, whether in pleasantry merely, or with some degree of seriousness under the guise of pleasantry, I cannot certainly distinguish; but I will acknowledge that I had rather taken it, that it was with some degree of seriousness, though with the appearance of pleasantry, that I was reminded of the circumstance. Nor did I feel that I had the least right to take it amiss, nor'did I take it amiss, that it ^should be apprehended, that some possible leaning, perhaps imperceptible, might be derived from even so remote a relation, or contingent intercourse, or association. Eor it must occur to every one that there might be a prevenient wish in such a case to find the cause of the host good ; and to feel something like a disappointment, if it should turn out not to be the best; and who knows how far such a predisposition might go in forming a judgment. Perhaps the danger may be, that in guarding against this, the mind may go too far the other way, and be in danger of not doing justice to him in whose favor this previous disposition may be supposed to exist; and .which will be a consideration with the judge himself. Be that as it may, the fact is, that all these considerations had occurred to my mind independent of any hint thrown out in the case; and I had determined not to take any part, or to give an opinion, unless from a division of the Court it should *320 become necessary. There being no division it has not become necessary ; and therefore I give no judgment.
But I take the liberty of remarking, what greater ground of exception there might be in the minds of counsel, where a judge has at any time suffered himself to be entertained by a party, and partaken of his viands, and where there has not been, and could not easily be an opportunity of making a return, and certainly not a propriety of offering compensation. Hence it is, that it may be advisable to decline invitations of hospitality, even for the sake of the opinion of others. Eor when men in poioer receive attention, a suspicion arises that the mind may be gained in some degree by the compliment; and the fact of a suit pending is nothing, and idle to talk of; for a prudent person will look forward to the possibility of a suit pending some day, and with a view to that may entertain, flattering himself, that should the case occur, the judge will remember the good wine that he tasted in his house. The public have an interest in the mind of a judge being ab ira et amicitia vacuus; and it cannot be dissembled that such is the self love and weakness of our nature, that no mind can be strong enough to be wholly insensible to the delicate flattery of being received into a. domestic circle with civility and respect. And in addition to this, “wine maketh the heart glad,” producing a flow of ^benevolence to the party entertaining, which may be felt to the disadvantage, or at least to the dissatisfaction of the poor man, who cannot make it convenient to furnish such a sideboard, or spread such a table. I make these observations somewhat as excusing, or rather with a view to explain, for myself. Eor it is owing to no misanthropy, but to this, and reasons of regimen and command of time, that I have always endeavored to avoid, and for some years have wholly declined, invitations on the circuit. If I have no other merit, I will endeavor to have that of keeping myself out of the way of temptation to personal predilection; or at least the suspicion of it. But what is more, I wish to keep myself out of the way of feeling pain in deciding against one who has been my host, and making him feel the inference that I think him capable of being in the wrong.
These are minute reflections; but they lead to great results, and may not be considered as improperly introduced, or unworthy of a place, even in a report of this case.
Rule refused.